STATE OF IOWA ex rel. VERNON R. SEEBURGER, County Attorney, Appellee, v. EVERETT JAMES, Appellee; MARK L. JOHNSON et al., Appellant.

**INTOXICATING LIQUORS:** Nuisance—Abatement By Decree.  Even
1  though the owner of the property has abated the nuisance by excluding the offending tenant, yet the circumstances may be such as to justify the court in making assurance doubly sure by making the abatement a matter of decree.

**INTOXICATING LIQUORS:** Nuisance—Abatement—Costs.  The circumstances attending the nuisance and the bad reputation of the
2  place may amply justify the court in taxing the costs and attorney fees against the property.

Headnote 1:  33 C. J. p. 695 (Anno.)   Headnote 2:   33 C. J. p. 700.

*Appeal from Polk District Court.*—JOHN FLETCHER, Judge.

DECEMBER 16, 1926.

Suit to restrain maintenance of liquor nuisance.  A permanent injunction was granted.  The owner of the premises, Johnson, appeals.—*Affirmed.*

*Howard L. Bump,* for appellant.

*Vernon R. Seeburger,* for appellee.

MORLING, J.—The property in controversy is a residence property in the colored district, occupied, at the time in controversy, by defendant James, under a lease from defendant John-

1. INTOXICATING LIQUORS: nuisance: abatement by decree.

son.  The place was raided February 28, 1925. Seven men and five women, who had been drinking, were there.  James was drunk.  There were whisky glasses on the table.  A half-gallon bottle about half full of moonshine whisky was found there.  The reputation of James for keeping intoxicating liquor is bad.  A police officer had

arrested him several times, and told his reputation in court, though James had not been convicted, to his knowledge. James has no occupation. The reputation of the premises as a place where liquor is sold, contrary to law, is bad. Defendant owner testified that he rented the premises to James in March, 1924; could not answer that James was employed; owned other property in the vicinity; had heard that some of the tenants might be watched, with good propriety; had occasionally inquired as to the reputation of the place, from a colored preacher. Defendant owner does not say what answer the colored preacher gave him. Defendant owner testified that no one had ever complained to him about James's keeping intoxicating liquor for sale; that the colored preacher never complained to him; that the first he heard of James's keeping intoxicating liquor there was notice of the present suit. Defendant owner, on March 19th, served notice to vacate. James vacated in three days. The son of defendant owner testified to substantially the same things, and that James told him that he was a teamster; that, when witness went to collect the rent, James was usually there, around 11 in the morning or 3:30 in the afternoon; that he probably saw him three times; that he did not know of James's working at any occupation; that he made no investigation as to his character.

Defendant complains that he had evicted James and abated the nuisance, and that the court therefore erred in ordering abatement and closure. We are of the opinion, particularly in view of the considerations about to be made, that the court very properly insured abatement by making it a matter of decree. *Lewis v. Brennan*, 141 Iowa 585; *State v. Knapp*, 178 Iowa 25; *State v. Clark*, 189 Iowa 492; *State ex rel. Rippey v. Gruener*, 195 Iowa 575; *Smith v. Foster*, 153 Iowa 664.

Defendant complains further that costs, including attorney fee, should not have been assessed against the property. He says that:

"It appeared that the only persons that the policemen talked with were themselves. This is overcome by the positive testimony of Mark L. Johnson and his son that they had made inquiry in the neighborhood, had visited the place several times, and had no complaints."

Costs are assessed against the property when it is occupied

and used for the illegal purpose, with the knowledge of the owner or his agent.  Section 1960, Code of 1924.  Evidence of

2. INTOXICATING LIQUORS: nuisance: abatement: costs.

the general reputation of the place is admissible on the question of his knowledge.  Section 1962; *Judge v. O'Connor*, 74 Iowa 166.  The meaning of the word "knowledge" in these statutes, we think, is suggested by Section 2051, requiring the mulct tax to be imposed "against the owner or agent of said premises, when they knew, or ought in reason to have known, of said nuisance." *Judge v. O'Connor*, 74 Iowa 166.  In any event, effect must be given to the law that general reputation is admissible on the question of knowledge.  It is within the power of the legislature to guard against the use of property for illegal purposes by one to whom the owner has voluntarily surrendered its control, by subjecting the property to liability for the consequences of such illegal use, though not authorized by the owner.  *Van Oster v. Kansas* (U. S.), 47 Sup. Ct. Rep. 133, 71 L. Ed. —.  It is the evident purpose of the statute to prevent evasion by making the property liable when the owner knew, or "ought in reason" to have known, of the nuisance.  The law should be enforced according to its intent, and the owner ought not to be permitted to evade responsibility for allowing his premises to be used illegally by merely denying knowledge, when the evidence, including that which the statute specifically makes admissible, shows that he had, or ought "in reason" to have had, knowledge.

Defendant urges that "the only testimony of the plaintiff is the testimony of the police as to the reputation of the place.  On cross-examination, it appeared that the only persons that the policemen talked with were themselves.  This is overcome by the positive testimony of Mark L. Johnson and his son that they had made inquiry in the neighborhood, had visited the place several times, and had no complaints."  One of the police officers testified that he told the "booze squad" what he thought James's reputation was.  This is the only foundation in the record for the claim that the reputation of James and of the place was a reputation in police circles only.  James had occupied the place about a year.  The officers testified squarely, without qualification, that James's general reputation in Des Moines as being a person who sells intoxicating liquor, contrary to law, and the reputation of the premises as being a place where liquor is sold,

contrary to law, are bad. This testimony is not contradicted, nor does defendant or his son deny knowledge of such reputation. Defendant's testimony is suggestive that he had heard. "Occasionally I inquired as to the reputation of the place from a colored preacher, Henry McCraven." He does not say what McCraven told him. He merely says that McCraven "has never complained" to him. Defendant had heard that some of the tenants there might be watched. He does not say which ones. We think that, on the defendant's evidence, he had reason to believe that James had no legitimate employment. We are of the opinion that, upon this record, the defendant had sufficient knowledge to subject the property to liability for costs. The court did not assess the mulct tax, and the State does not complain.

The judgment is—*Affirmed.*

EVANS, STEVENS, FAVILLE, VERMILION, and ALBERT, JJ., concur.

DE GRAFF, C. J., not participating.